Good afternoon and welcome to our court. We will hear the case of Dallas v. Warden Holman Correctional Facility, and we'll begin with the petitioner-appellant. Good afternoon. Good afternoon, Your Honor. May it please the Court, I am Natalie Olmstead and I will be arguing this case on behalf of Donald Dallas. Mr. Dallas did not receive a fair trial. Why? Because the Deputy Attorney General who was forced to represent him in this capital murder case was conflicted and ineffective. Holloway v. Arkenstahl clearly established that if prior to trial a defense counsel makes an objection to joint representation of conflicting interests and the trial court does not adequately inquire into that objection, reversal is automatic. The Alabama Court of Criminal Appeals did not apply Holloway when analyzing Mr. Dallas' conflict claim. But didn't Holloway involve the representation of two co-defendants in a criminal trial? And isn't this a different situation here? Yes, Your Honor. Holloway did involve the representation of co-defendants. However, the legal principle is still the same. And the Supreme Court has held that it's the legal principle, not the facts of a specific case, that are what establish the clearly established federal law. Moreover, the Supreme Court has specifically held that it's the language used in a holding, not dicta in a case, that governs whether something is clearly established. Here, the Holloway Court repeatedly used the term joint representation of conflicting interests or simultaneous representation of conflicting interests rather than just using the term co-defendant. Here, we did still have joint representation of conflicting interests. Attorney Aguicola, on one hand, represented Donald Dallas and, on the other hand, represented the state of Alabama. Let me tell you the problem that I'm having with the argument and maybe you can help me with it. Some years later, the Supreme Court in Mickens told us what they understood Holloway to mean. And the majority, writing for the majority, Justice Scalia wrote the following, and tell me how we deal with it. He says, and I quote, Holloway thus creates an automatic reversal rule only where defense counsel is forced to represent co-defendants over his timely objection unless the trial court has determined that there is no conflict. It seems pretty clear that the Supreme Court took Holloway to be confined to one, a circumstance where one lawyer represents co-defendants, essentially in the same case, whether they're tried together or not, and two, there's got to be an objection. And in the absence of both of those circumstances, you're back with a different rule of the game under Collier. It doesn't mean you're stuck with Strickland, but you've got to show an actual conflict and you have to show that it affected the representation in some obvious or palpable way. What am I misunderstanding about this? So, Your Honor, first I would say that what you just read isn't the language of the direct holding of Mickens, because the facts of Mickens distinguish from that. And the holding of Mickens is that the Sullivan rule does not apply to consecutive representation. So I would first argue that that's just dicta. And the clearly established language used in both Sullivan and Holloway is that one of those two cases applies any time there's joint representation of conflicting interests. And the only difference between the two cases is whether an objection was made. Of course, we've said there's dicta and then there's Supreme Court dicta. Yes. And five members of the Supreme Court of the United States said the Holloway rule of automatic reversal only applies where the defense counsel is forced to represent a co-defendant over his timely objection unless the trial court has determined there's no conflict. So they got their misreading Holloway. Your Honor, I think that that one statement isn't necessarily misreading it. I think the language there is just trying to differentiate it from situations when an objection was made. I think they used co-defendants, but I think what they were really referring to was joint representation of conflicting interests. And I would also point the court to Wood v. Georgia, which is another Supreme Court case where they applied these frameworks. Right, but they could have said the Holloway rule creates an automatic reversal where the defense counsel is forced to represent two parties who have opposing or conflicting interests over a timely objection. But that's not how they put it. And the reason, of course, as Mickens explains, is that we'll do away with the kind of prejudice requirement that Strickland imposes where you have the circumstance where the same lawyer is representing two defendants, criminal defendants, co-defendants, same case, timely objection. Because it's hard under those circumstances. It's really measuring prejudice is not an easy sort of thing to do, and it's really unfair. So the court creates sort of this rule. But I'm hard-pressed to see how I get around that, other than for you to say it's dicta and don't follow it, or it's dicta but it doesn't mean what they mean, what they seem to be clearly saying. And, Your Honor, I think there is one other way, and I want to point you to a part of Mickens. When Mickens is discussing the Wood case, which is also a Supreme Court case dealing with this, it explains that Wood established that heightened review is not just limited to co-defendants but instead to active representation of conflicting interests. So I think the distinction in Mickens is between concurrent or consecutive representation. And I don't have the page number written down, but I can find that in Mickens where it discusses Wood before the rebuttal. But I think that is what the language that kind of contradicts that previous sentence, that it only applies to co-defendants. So I think Mickens is really limited to the consecutive versus concurrent representation, and here there is no doubt that we had concurrent representation. Also here, there is no legal reason why the CCA should have applied Sullivan and not Holloway. Whether Sullivan or Holloway deplies depends only on whether there was an objection made. The Sullivan Court held, in order to establish a violation of the Sixth Amendment, a defendant who raised no objection prior to trial must demonstrate actual conflict and adverse effect. This shows that Sullivan is limited to cases where no objection was made. This Court has also interpreted the difference between Sullivan and Holloway as the cases where the rejection was made. In Hamilton v. Ford, this Court held that Sullivan is limited to cases where no objection to joint representation was made prior to trial. This is the only distinction between Sullivan and Holloway, which means that the CCA violated clearly established federal law by applying Sullivan and not Holloway because there was no objection here. So contrary to clearly established federal law, the CCA never analyzed this claim under Holloway. This means that this Court must perform the Holloway analysis de novo. So the question becomes whether counsel made an objection, which they did, and whether the Court adequately explored the nature of that objection. Prior to trial, Agricola objected to jointly representing both Donald Dallas and the Office of the Attorney General who represents the State of Alabama. As explained in Zuck, an attorney has a significant risk of conflict if he owes allegiance to both parties of the litigation. Here, Agricola clearly owed allegiance to both the State of Alabama and to Donald Dallas, and he made this clear to the Court. Just like Holloway, the trial court did not adequately explore the basis for defense counsel's representation that there was a conflict of interest. The trial court did not give proper weight to Agricola's representations that he felt conflicted. Instead, it disregarded these representations and held that, and did not analyze the claim under the Constitution as it should have as required by Holloway. But Zuck did involve a different circumstance where the criminal defense attorney was representing not only the criminal defendant, but also the attorney general personally. And here, we have a situation where it's not that direct of a conflict, if there is a conflict, representing a criminal defendant, but also representing one of the state agencies. And I agree factually different, and I think the key language is whether or not the attorney has a significant risk of owing allegiance to two different parties. And here, Agricola represented that he did, in fact, feel that he had allegiance to both parties. Under Holloway, the court was required to take that essentially as a statement under oath, and could only discredit his representation that he had a conflict under special circumstances. So, if it determined that the attorney was trying to delay the trial, or if it determined it was filed for some improper purpose, he could discount those representations. But aside from unusual factors, the trial— As I understand the conflict that you're asserting, the conflict was where the same lawyer represented the defendant in this capital case, and represented the department, the mental health department. Those were the clients, right? The attorney general is not his client. So, Your Honor— I have that right, do I not? In his role as an attorney general, he was representing the department of mental health. However, as he explained in his motion, the statute under which he was appointed as an attorney general said he was subject to full discretion and control of the office of the attorney general. Let me ask the question this way. What was the actual conflict between representing the defendant in this case and representing the department, mental health, in that class action? It doesn't jump off at the page of me that the interests between his client in the capital case and the department were pitted against each other. And it seems to me you have to really work hard to sort of draw out a theoretical possibility that if this and this and that, then maybe there could be. Have I misapprehended it, or is there something more direct? Your Honor, I believe there is. Can I just clarify? Sure. So, you're asking if you apply Sullivan, what the actual conflict is, right? If it's under the alternative argument that Sullivan applies. So, to show actual conflict under Sullivan, you only have to show that the defendant owed duties to parties, or the attorney owed duties to parties that are adverse. So, here he still owed a duty to the state of Alabama, and the state of Alabama was prosecuting Donald Dallas. And that's where the actual conflict arises from. Because the state of Alabama is a party to a capital trial. Does that answer your question? It does. There's nothing more direct than that. I think that that is the direct nature. I think that is a direct nature of the conflict because the parties are. So, what you're saying is, as an appointed deputy attorney general to represent the department in this particular matter, there was necessarily a conflict with the criminal defendant simply because he was representing the state in some corporate sense or its agency. Yes, and I will point out that several courts have agreed with that. First, there are several states that actually have laws against a deputy or special attorney general, even if they're only working in civil matters, representing defendants in capital cases. And Georgia is one of those states. Additionally, Illinois and Montana have both held that an actual conflict exists where defense counsel is a special attorney general, even though limited specifically to non-criminal work. It seems important to me that he thought he had a conflict, I mean, regardless of anything else. I mean, he came to the judge and said, I have a conflict. Please take me off this case. Your Honor, I completely agree, and I think that is where we get into the adverse effect as well. Because he felt conflicted, he removed himself from the process, which ultimately led to ineffective representation. He failed to investigate the guilt phase. He failed to investigate mitigating evidence. He failed to meet with his client. He failed to explore necessary experts and just overall neglected to prepare for this case. He has even said in his Rule 32 deposition that he was spending 14 to 15 hours working for the state of Alabama and that he prioritized his duties to the state of Alabama over his duties to Donald Dallas. So if we get to the Sullivan analysis, I think there's a lot of— But that would suggest that the performance was deficient. That wouldn't suggest that there was an actual conflict. Your Honor, I think his—the point I was trying to make was that his statement that he was actually conflicted was true and that we have to give credit to his statement that he felt conflicted and he felt that he had a duty in the language he used to serve two masters. And under Holloway, back to Holloway, we do—the court is supposed to credit that as if a statement is made under oath. What happens if we determine that Holloway does not apply, if there is no automatic reversal rule in effect? What does that do to your appeal? So if Holloway does not apply, the CCA still violated—or unreasonably applied Sullivan because they didn't remand for a hearing. So Sullivan itself, in almost every case that applies Sullivan, gives the defendant an opportunity to present evidence of actual conflict and adverse effect. So if, in fact, this Court finds Holloway doesn't apply and that CCA applied Sullivan correctly, it should still find that they unreasonably applied Sullivan by not giving Mr. Dallas that opportunity. Proving actual conflict and adverse effect necessarily requires evidence outside the record. To prove adverse effect, you have to show either, one, that the attorney made a choice between alternative courses of action, or two, point to some plausible alternative defense strategy or tactic that might have been pursued. So if this Court defines that Sullivan was the correct standard, the CCA still unreasonably applied it and it should remand this case for an evidentiary hearing on adverse effect. So the fact that the Court held a hearing on the motion to withdraw, you're saying, is not sufficient? That is not sufficient because under a Sullivan hearing, it has to be post-conviction because you have to show the conflict had an adverse effect on representation. So you necessarily can't show that until after the trial is over. So the CCA should have remanded for a Sullivan hearing on whether those things occurred. And a hearing like that has never occurred in this case. We did proffer some evidence in the briefs of the type of evidence that could be presented at a hearing like that, but it does not cover everything and Mr. Dallas would be entitled to an opportunity to have such a hearing if Sullivan governs this claim. I want you to use your time for what you think is important, but I do think you have some things to talk about on the ineffective assistance of counsel with regarding to the mitigation case. Yes. And when you're ready, I have a question about the procedural issues associated with that. Absolutely. So first, I'd just like to point out that the trial court abused its discretion by claiming to consider this case on the merits, but not holding an evidentiary hearing and failing to assume the pled facts are true and the mitigation. Under the SHERO standard, the court was required to assume every fact pled was true if it was not going to hold an evidentiary hearing since it was considering the claim on the merits. In assessing prejudice, the court must reweigh the evidence in aggravation against the total availability of mitigation evidence. It did not do this because it discounted mitigation evidence that was pled and it improperly increased aggravation evidence. The most egregious example of this is that the district court considered Mr. Dallas's Rule 32 petition as aggravating evidence when it performed this balancing test. It said, in fact, that the Rule 32 petition was the most damning evidence of aggravation before this court or any court to come in the future. This is absolutely forbidden by the law. The Supreme Court forbids punishing a person to allow them to do what the law plainly allows them to do. Additionally, this is contrary to the facts because a petition is a legal document and Mr. Dallas should not be faulting for telling his mitigation story. The court claimed that he was throwing his family members under the bus when he was merely pleading facts that were true and faulted him for this. Just talking about family conditions or the conditions in the home. Yes. Let me ask you this. The whole issue of whether a motion for reconsideration tolls the time for filing an appeal. It is my understanding that Judge Myron Thompson said that that rule was not routinely applied in a consistent way or whatever the magic words are. What is your best authority in support of his position on that? Your Honor, I think that this court is required to abide by the district court ruling because that is not subject to this appeal. The court ruled that that rule was not firmly established and regularly followed and the state did not cross appeal that today. So I believe this court has to accept that ruling at this point because it's not a matter of this appeal. And I think we did submit a supplemental appendix with the holdings on that and they did hold. Let me see if I have a case. Sorry, Your Honor. Just give me one second. I think the best support is that at the time of Mr. Dallas's case, which was what we have to go by, not what happened after, the rules were applied inconsistently and the district court found that ruling. And I guess I would stick with it's not subject to this appeal. Now, if the court would like supplemental briefing on that, we can provide it. But since it was not raised in this appeal, I don't think it can bar federal review. The district court held it could not bar federal review. Let's assume for the purpose of my question, counsel, that there's no procedural bar or default. District court went off on the merits de novo on the issue of prejudice. Help me with that. Tell me why the district court was wrong. That is to say, if you added together all of the new with all of the old, all of the good with all of the bad, there would be a substantial likelihood the result might have been different. That is to say, a sufficient likelihood undermining confidence in the result. Absolutely. And there's a couple of reasons why that is the case. And I think both Williams v. Taylor and Wiggins are on point here because here a lot of the missing mitigation evidence was even more substantial than the missing mitigation in those cases. I know those cases. Tell me, it seems to me when I looked at it that much of it was cumulative, although explained in greater detail, assertions that were made at the guilt stage and the penalty stage, but that some things were new. Yes. That were not presented at all. Perhaps the most salient one was the claim that the defendant had been sexually assaulted as a child. That seems to me to be what was new or different. The only other difference that I could see, other than expanding the details, was the second mental health expert, Benedict, adds the assertion that the defendant was suffering from attention deficit disorder. And that was not an opinion offered by Dr. Renfro on Round 1. So those struck me as the only things that were new or different that had not been raised in any way. Do I have that right? Yes, Your Honor. I think there's a few more, but those are probably what I'd point out as the two main points. Okay. But as a second, and I will go through the things that I think are new, but as a second point, I'd also like to point out that the details actually do matter in this case. Strickland analysis is done on a case-by-case analysis. In this case, the court specifically said that it was not giving great weight to the defendant's turbulent upbringing. So here, any detail about the upbringing could have affected the trial judge's decision when it made that statement. So the details are not just cumulative because there's a reasonable probability they would have affected the judge's view of the situation. And as Your Honor mentioned, there are several new things. I think the biggest new thing being that Donald was raped by a 59-year-old man when he was a child and then was forced to watch the same man rape his brother. On top of that, although the house was described as- Help me with that. Wasn't there evidence, though, from the sister, Cindy, who said that she had sustained sexual assault as a child and her brother, the defendant, knew that? So, yes, there was. He was aware in this violent home that she had been the victim of that. Yes, but there was no testimony that he himself had been sexually assaulted. No, I understand that. On top of that, the new evidence pled is that the home was inhabitable. It was full of rats, feces, animals, and urine, and Mr. Dallas was even bit by a rat in his whole home. That is evidence that was not presented at the trial. Also, the evidence of cognitive disorders and ADHD that you mentioned, that those caused problems with his executive functioning, affected his thought process, and made him more susceptible to the influence of others. That was not presented, and it's very important because it played right into the defense at the penalty phase that Donald was influenced by Polly. Didn't Renfro say that he also suffered from cognitive impairment? Renfro mentioned some basic things in the penalty phase but did not do actual neurological testing. But did he not opine that the defendant was suffering from that problem? I'm out of time. May I answer? Please. Yes. So he did opine that Donald was suffering from some impairment. He did not say what. Didn't he say it was a cognitive impairment that he had sustained and he was suffering from it? But that was in the context of his evaluation of whether he was competent to stay trial, not in the context of mitigation. Thank you. Thank you. May it please the Court. My name is Henry Johnson. I represent the respondents. To begin with the first issue, Holloway v. Arkansas does not apply to Donald Dallas's claim. In Holloway, the Court set forth the rule that whenever a trial court improperly requires joint representation over timely objection, reversal is automatic. And it's important to remember the context in which Holloway was decided. In Holloway, a single public defender was appointed to represent three co-defendants. And he objected multiple times, both before and during trial, asking the trial judge to appoint separate counsel for two of the co-defendants because he couldn't represent all three. The trial court refused, did not hold a hearing, and also refused to allow him to cross-examine any of the three on behalf of the other two. And in explaining its decision in Holloway, the Supreme Court emphasized the joint representation is suspect because of what it tends to prevent the attorney from doing, and that the evil that accompanies joint representation is what the advocate finds himself compelled to refrain from doing, not only in trial but also as to possible pre-trial plea negotiations or sentencing. In other words, representing co-defendants is very difficult. That's what Holloway was all about. And as Your Honor mentioned, in Mickens v. Taylor, the Supreme Court has clarified for us what the law is in 2002, and that is that Holloway created an automatic reversal rule only where defense counsel is forced to represent co-defendants over his timely objection. I know we have our standards of review about this, and I also know you were not there 24 years ago when Mr. Agricola said, I've got a conflict, please let me off this case. But don't, in your private moments, don't you kind of wish everybody had said, okay, yeah, you're right, you can get off this case, because we wouldn't be standing here 24 years later talking about it. I understand Your Honor's questions and concerns, but this is an AEDPA case, and the Supreme Court, even if you would consider it DICTA and Mickens, has told us that these cases are about co-defendants. And this is not a case where you had co-defendants. This is a case where you had an attorney who was simultaneously representing the Department of Mental Health and Mental Retardation and Donald Dallas. And look, and it's even a question as to whether Sullivan applies here or just simply Strickland v. Washington, because in Sullivan, in order to establish a violation of the Sixth Amendment, a defendant must demonstrate that an actual conflict of interest, first of all, actual conflict of interest, two, adversely affected his lawyer's performance. And here, as the Court of Criminal Appeals found, there was no actual conflict of interest, because the interests of the Department of Mental Health and Donald Dallas were never in any way in conflict. And it's important to note also, just stepping back real quick, in Mickens, the Supreme Court has clarified that whether Sullivan applies outside the scope of multiple concurrent representation, which is also known as joint representation or dual representation, is an open question. And in fact, it's important to note that the Supreme Court has never found a violation of the Sixth Amendment where a conflict of interest arose in a situation not involving a lawyer's concurrent representation of multiple defendants. There's never been a case outside the multiple concurrent representation, in other words, co-defendants. She says the conflict adheres in representing the state at the one hand and the defendant on the other. It's as simple as that. And you don't have to show more. You don't have to show any particularity as to how those interests are pitted against each other. It's enough as a general matter that on the one hand, the lawyer is representing the state, and on the other hand, he's representing the defendant whom the state is prosecuting, albeit in a different proceeding, in a different forum. With respect to my friend, I would say that I have a disagreement with that, that there's more that you have to show. You have to show an actual conflict of interest which adversely affected the performance of the attorney. I take it your position is there's no clearly established law that supports her position. That's absolutely my position, Your Honor. And looking one more time at Mickens v. Taylor, and as the Court of Criminal Appeals reasonably found here, Dallas failed to show that Agricola, the attorney, labored under an actual conflict of interest that affected counsel's performance as opposed to a mere theoretical division of loyalties. That was a key phrase in Mickens, a mere theoretical division of loyalties. And I would submit that on this record, Dallas has not even shown a theoretical division of loyalties occurred in this case. Speaking of Mr. Agricola's performance, as best I can tell you, you don't really contest this idea that he was ineffective in investigating and presenting a mitigation case. Am I right about that? Well, that issue, I don't believe, is before the court, Your Honor, in terms of the guilt phase. I'm talking about the penalty phase. I said mitigation. I apologize, Your Honor. Yeah. Well, we do. We don't believe, I mean, the district court primarily focused its decision with respect to the IAC penalty phase claims on prejudice. Not performance. So that's my question. I mean, you're not contesting that his performance was deficient. Well, we're not conceding that it was deficient, but we're focusing, like the district court did, on the prejudice aspect. Well, it's my understanding, and I'm sure that you understand the case better than I do, but that neither Agricola nor Duffy ever talked to any of the mitigation witnesses until after Mr. Dallas had been convicted, right before they put him on the stand. I mean, that is a fact in this case, isn't it? That's actually a fact that's for dispute, Your Honor. And I would point to the testimony of Jeff Duffy, his other trial counsel, regarding the mother, Elaine Dallas. And he said that he took her call a couple of times before the trial, but Dallas had told him not to speak with her. And therefore, he didn't speak with her. Okay. So maybe he talked to her on the phone. Maybe he didn't. But other than that, I mean, they were putting the mitigation witnesses on the stand without ever having talked to them and not really knowing what they were going to say. Well, Susan James, their mitigation investigator, and actually the third… Who they hired five days before the trial. That's correct, Your Honor. But it is interesting to look at the dynamics of this case. Susan James, Jeff Duffy, and Al Agricola had all worked together in a law firm for three years, and they all came together again for this case. And so Susan James was a very well-experienced trial attorney who had also been accepted as a mitigation investigator. But, I mean, if you don't have time to, you know, put your experience to use, I mean, five days before the trial, they hire her? And I believe she did the best that she could under the heinous nature of the crime that we're discussing. And going back to this, turning to the issue number two, if I may, Your Honors. And, by the way, nobody up here is contesting the fact that this was a heinous crime. And I know we have Ms. Live Oak's family here, and, you know, we're horrified about what happened to your family member, and we are so sorry. But Mr. Dallas still has a right to a trial, and so we've got to talk about that. So, you know, when I read about, when I read Ms. Knight's testimony, I mean, it seems so clear that the lawyers for Mr. Dallas are hearing that for the first time. You know, the testimony that Judge Marcus mentioned about her being molested, so the question was, now, to Mr. Dallas's sister, can you tell us any specific instances of violence that did occur in the home that Donald would know about? Answer, yes. Question, can you tell us what specific instance? Answer, when I was molested. Question, anything else? Answer, I don't know. I mean, there's just no follow-up. There's no, and the fact was he had been molested. Well, that's something we would dispute, but I believe that your question, Your Honor, goes more to the ineffective assistance in terms of the deficient performance prong, not to the prejudice prong. And that's what I'll briefly address right now. I mean, it's important to understand that there were four aggravating circumstances here. This was a robbery. This was a kidnapping. Dallas was previously convicted of a felony involving the use or threat of violence to the person. And that, of course, this capital offense was especially heinous, atrocious, and cruel. As part of its de novo review, the district court weighed the totality of the new mitigation evidence, along with the old mitigation evidence, against the aggravating evidence, and found that assuming all of the factual allegations to be true, and that's a key point, the district court assumed all the factual allegations to be true, conducted de novo review, that there was simply no prejudice here. And that was mainly because of what, Your Honor, Judge Marcus was mentioning before, that the evidence offered before the district court was, in large part, 90 percent cumulative. Well, let's talk about what wasn't. Certainly, Your Honor. It's clear that what comes out later are at least two things that are different, the most salient of which were, one, that the second mental health expert says that the defendant suffered from attention deficit disorder. That was not an opinion offered by Renfro, the first mental health expert. That's true. Called by Mr. Dallas at the trial, at the guilt phase. And the second thing that was new was that he had been the victim, allegedly, of a sexual assault. What about those two things? Even if you were right that the other stuff is cumulative, the other stuff, of course, details at length, things that had been mentioned but not in the same detail. But let's talk about what's new. What's new? The first thing that is new, Dr. Benedict. Her argument is what was new was so significant that when added to the totality of the old, there is a reasonable likelihood the result would have been different. That's the standard we are charged with applying. Yes, Your Honor. Well, the district court made short shrift of the ADHD diagnosis and saying, compared to the facts of the crime and the four aggravating circumstances, that especially in light of Dr. Renfro's testimony, although he didn't mention the ADHD diagnosis and some of the cognitive deficits, that Dr. Benedict was basically cumulative of Dr. Renfro. And, in fact, there was actually an aggravating edge to Dr. Benedict. In the sense that he found that Donald Dallas had an average intelligence, whereas Dr. Renfro, who testified at trial, said he was below average intelligence. So the evidence proffered before the district court could have actually been more harmful than the evidence that was actually proffered at trial. Turning to the sexual abuse allegation, that allegation first appears in an affidavit by his brother, Donald Dallas' brother, Paul Dallas, in 2007, that's submitted to the district court. As the district court correctly held, and it's a very lengthy opinion, Dallas alleged no specific facts, furnished no evidence, showing that he ever informed his trial counsel or his mitigation expert that he had been sexually assaulted in the manner alleged in his brother Paul's affidavit. So I'm just curious, the position of the state of Alabama, the burdens on the death row inmate to come forward and say, I was sexually abused as a child. No, Your Honor, that's not the law. The law is certainly that they have a duty to investigate. But the point is that there were no facts proffered to the district court that Dallas did ever mention any of this, that there was never any discussion. Is there any evidence that they ever asked? Is there any evidence from the attorneys who represented Mr. Dallas that they asked Dallas? In words or substance, whether it was Duffy, Agricola, or Susan James, were you ever assaulted, sexually or otherwise? I have no evidence either way. There's nothing in the Rule 32 hearing that they were ever asked that, and there's nothing that they ever offered by way of affidavit, right? One way or the other. One way or the other, no, Your Honor. We certainly know they asked Cindy Knight, his sister, because his sister was asked on the stand whether she was molested. But I just read the whole scope of that. I mean, that was pretty limited. I agree with you, Your Honor, that it was limited. But she wasn't asked whether her brother was ever sexually assaulted, right? She was not asked that. So what she testified to before the jury was that she was the victim of sexual assault and that her brother was aware of it. And that her brother was aware of it. And that the house was a particularly violent one. She described it as, quote, hell. That's correct, Your Honor. She did describe it as hell. But going back to how the district court handled the sexual abuse allegations, it paid them a great deal of attention. In fact, on page 252 of the district court opinion, it wrote, I apologize for reading, I want to make sure I get it right, the most compelling piece of new mitigating evidence presented by a petitioner to this court is the assertion by petitioner's brother, Paul Dallas, and then it goes on to explain what that was. And then the district court considers that, assumes it to be true, under de novo review, and finds that weighed against the totality of the aggravating evidence, especially the egregiously heinous nature of the capital offense, Paul Dallas' affidavit still does not satisfy the prejudice prong of Strickland. That was how the district court analyzed this claim. And we would submit the district court did not clearly err in so doing. And, of course, Paul Dallas, who, you know, was sexually molested, at least, you know, that's what the record shows. There's evidence that they were sexually molested by the same person who made the other child watch. And so Paul Dallas testifies. And the question to Paul Dallas at trial from Duffy was, I'm not going to make you repeat a lot about what Cindy said, but is there any differences in what she said about your upbringing and your background? And the answer was, no, sir. So, you know, I guess I keep trying to get you to say you're not contesting the fact that this was deficient performance during the penalty phase. Again, I'm not conceding that it was deficient performance. No, no, no. I'm trying to understand why not. I'm focusing, Your Honor, on the prejudice prong because that's what the district court did. The district court chose to focus on the prejudice prong. And if you can focus and dispose of a case on prejudice, you don't have to address deficient performance. So that's what I'm trying to base my argument on, is saying why the district court should be affirmed. Let me go back to something you just said a moment or two ago. You pointed out what the district court concluded, but that's not a finding of fact to which we owe any deference, is it? That is to say the district court said, yes, it's true that there was new evidence about sexual assault that came in, but it wouldn't make a difference. When weighed against the particularly egregious aggravators, most particularly the horrific death that the victim sustained. That's correct, Your Honor. That's what the district court found. That is a conclusion of law to which we owe no deference, right? That is correct. It's de novo review for Your Honor's court. That determination is purely de novo. That's correct, Your Honor. So there was no particular fact finding by the district judge to which we were obliged to defer? Or is there any fact finding by the district judge here to which we have to defer? It doesn't mean he's wrong. I'm just saying are we not obliged to look at this de novo and ask the same question he asked, that when you add the new to the old, the good and the bad, you shake it up and you ask, is there a reasoned likelihood the result would be different? Yes, Judge Marcus. That determination we make de novo just as the district court was required to make without giving any deference to the state court because the state court, the trial court, never addressed the issue of prejudice, really, really only talked about performance. The state trial court, Your Honor? The habeas court, the Rule 32 court. Rule 32 court. Yes, Your Honor, I would concede that's correct. Moving on briefly, just to touch on the third issue, as my friend did, about the procedural default at issue here. They're two separate issues. They're timeliness issue, which was ruled upon by Judge Myra Thompson many, many years ago, and then the procedural default issue, which is before this court. It's encompassed within the certificate of appealability because the second issue is whether the . . . But if you're right, why should we fuss with it? Why shouldn't we just take the issue just the way the district court did, look at it de novo and ask the same question and not struggle with whether or not there was a tolling or a default here? It's a tricky kind of question, the default, whether it was told by the filing of the post-trial motion. It is true, Your Honor. And that's not squarely answered by Maples, right? It isn't, but Maples is very influential, and I would say that the reason . . . The district court had never ruled on the procedural default issue. The district court did rule on the procedural . . . or on the timeliness issue. Right. It never addressed the . . . Neither Myra Thompson . . . He just went right to the merits, I understand. And Judge Watkins. I'm simply asking why oughtn't we to do the same thing? Because, Your Honor, it's an affirmative defense that we've maintained for 18 years, and it's clearly an issue that is before this court. Are we obliged to answer that question? Your Honor, certainly not obliged to it. Of course not. Neither was the district court, and neither did the district court. But we would urge this court to do that as a respondent because it is before this court under the third question of the certificate of appealability, and it matters. Are these claims procedurally defaulted? And Maples is perhaps . . . The way Maples came up, the petitioner in Maples missed his time for filing his notice of appeal, just like Dallas did. But the way he phrased his argument was that the Alabama rules, the 40 days' time for filing the notice of appeal, were not firmly established or regularly followed, which is the magic language, firmly established and regularly followed. And therefore, the procedure for perfecting an appeal from the denial of a Rule 32 petition was not firmly established or regularly followed, and therefore, he should win in this court. And this court said absolutely not. This court held that the procedure for perfecting an appeal from the denial of a Rule 32 petition was firmly established and regularly followed, which goes to our point that since 1989, a motion to alter, amend, or motion for reconsideration in a Rule 32 proceeding does not toll the time for filing your notice of appeal. And we've been maintaining that for 18 years, and that's why I would ask this court to weigh in on that third issue. But with that, if there are no more questions, I'm happy to ask the district court. Thank you very much. Thank you, Your Honor. Ms. Olmstead, you've reserved five minutes. Thank you. Yes, thank you, Your Honor. The Office of the Attorney General just argued that a Deputy Attorney General did not have a conflict when he concurrently represented Mr. Dallas. When making this argument, he said that the Supreme Court had never applied Sullivan or Holloway to a case not involving co-defendants. This is not true. In Woodview, Georgia, the Supreme Court, on their own merits, remanded a case because they believed there was a conflict where an attorney represented both employees who were being fined and their employer who had represented he was going to pay that fine. That is not co-defendants. The employer was not a party to this case. So the Supreme Court has applied this analysis outside of that. And, in fact, this is what I was pointing Judge Marcus to in Mickens, is their discussion of Woodview, Georgia, which I did locate. It's on page 169 to 170. And there they say, when discussing it, they say, Moreover, the possibility that counsel was actively representing the conflicting interests of employer and defendant was sufficiently apparent at the time of the revocation hearing to impose upon the court a duty to inquire further. So there, even in Mickens, they're interpreting Wood to say that you have to make this inquiry any time there's active representation of conflicting interests and not just limiting the case to co-defendants. Why, then, if that were the case, would they write that Holloway thus creates an automatic reversal rule only where defense counsel is forced to represent co-defendants over timely objection unless the trial court made that determination that there is no conflict? And, of course, the court recognized Wood, cited Wood, discussed Wood for a page and a half. Yes. And there was nothing in Wood, they thought, that altered this general proposition. If you were right, there would have been no reason for them to have added this. And I think the focus of that first quote you're reading should be the simultaneous. I think simultaneous representation of conflicting interests can be interchanged with simultaneous represent of co-defendants. So I think the point that Justice Scalia is trying to make there is that it's simultaneous. Right, but representing two defendants is not the same thing as co-defendants. That has a particular meaning. It's clear, Isabel, that co-defendants means two folks charged at the same time with the same crime. But the language of Holloway in its holding, which this court must apply, specifically says joint representation of conflicting interests. And, Judge Martin, jumping over to the procedural default, there's a few things I want to point out. The first is you asked for cases, and those are Fort V, Georgia, governs this. And also there's an Alabama case called Ex Parte Hill that was decided in 2000, and there it said that the motion did toll the time we need for filing. So as counsel said that this has been firmly established since 1989, that is not true as until 2000 they were still holding in some cases that the time was tolled. But importantly, I want to jump to the fact that we don't even have to get there because this claim was defaulted when it was abandoned by counsel. The Rule 32 court directly said the claim is abandoned. Brown v. Haley, this court's authority, clearly holds that when a claim is abandoned, it's procedurally defaulted. So the procedural default occurred earlier, and a later problem does not rid an earlier procedural default. So here the claim was procedurally defaulted when it was abandoned at trial, and therefore Martinez squarely applies because Martinez provides cause and prejudice to excuse a default when counsel is ineffective. Here Rule 32 counsel was ineffective for abandoning that claim. I would like to point out one more thing about the mitigation, and that's that the district court, although it purported to say it was considering the evidence it was true, it failed to do so. It undermined the evidence impermissibly. For example, with Paul's affidavit, it said that it was giving it less credit because Paul did not make a timely outcry and because there was no perpetrator arrested. That is improper at this point because at this point the district court was required to assume all facts were true. It failed to do so. Mr. Dallas is entitled to a new trial. First, he's entitled to automatic reversal under Holloway. Second, if the court reaches the mitigation claim, he is entitled to a remand for a hearing on whether or not he can prove the claims pled in his petition. Thank you very much. Thank you. Thank you both. This court is adjourned. All rise.